**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SHABAKA SHAKUR,**

                                        **Plaintiff,**

        **vs.**                                        **9:14-cv-00427**
                                                       **(MAD/TWD)**

**HAROLD GRAHAM, in his official capacity as**
**Superintendent; JUSTIN THOMAS, individually and**
**in his official capacity as Deputy Superintendent of**
**Programs; CHUTTY, individually and in his official**
**capacity as Security Captain; E. FAGAN, individually**
**and in his official capacity as Captain; ROGOFSKY,**
**individually and in his official capacity as Sergeant;**
**MURRAY, individually and in his official capacity as**
**Sergeant; G. STEINBERG, individually and in his**
**official capacity as Correctional Officer; GIFFORD,**
**individually and in his official capacity as Correctional**
**Officer; PELT, individually and in his official capacity as**
**Correctional Officer; HEWITE, individually and in his**
**official capacity as Correctional Officer; and DONNA**
**MARTIN, individually and in her official capacity as**
**Food Service Administrator,**

                                        **Defendants.**
_____

**APPEARANCES:**                                **OF COUNSEL:**

**SHABAKA SHAKUR**
89-A-2546
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, New York 12589
Plaintiff _pro se_

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Plaintiff _pro se_ Shabaka Shakur, an inmate in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS"), commenced this action

pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 alleging violations of his constitutional rights under the First, Eighth and Fourteenth Amendments, as well as under the Religious Land Use and Institutionalized Person Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq. *See* Dkt. No. 1. Thereafter, Plaintiff made an application to proceed *in forma pauperis* ("IFP") under 28 U.S.C. § 1915. *See* Dkt. No. 2. Magistrate Judge Thérèse Wiley Dancks granted Plaintiff IFP status. *See* Dkt. No. 6.

In her Order and Report-Recommendation, Magistrate Judge Dancks recommended that (1) Defendants Pelt and Martin be required to respond to the First Amendment claim in Plaintiff's first cause of action; (2) Defendant Thomas be required to respond to Plaintiff's third cause of action; (3) Defendants Hewite and Steinberg be required to respond to Plaintiff's fifth cause of action; (4) Defendants Chutty and Gifford be required to respond to Plaintiff's retaliation claim regarding the events on September 17, 2012 asserted in his seventh cause of action; (5) Defendant Steinberg be required to respond to Plaintiff's retaliation claim regarding the events of August 12, 2013 asserted in his seventh cause of action; (6) Defendants Pelt, Hewite, and Steinberg be required to respond to the First Amendment claim in Plaintiff's seventh cause of action; and (7) Defendant Fagan be required to respond to Plaintiff's retaliation claim regarding his placement in administrative segregation asserted in his seventh cause of action. *Id.*

The Order and Report-Recommendation further recommended that this Court dismiss Plaintiff's 42 U.S.C. §§ 1983, 1985, and 1986 claims for monetary damages with prejudice against all Defendants in their official capacities, as well as Plaintiff's RLUIPA claims for monetary damages against all Defendants in both their official and individual capacities. *Id.* Lastly, Magistrate Judge Dancks recommended that Plaintiff's remaining claims against the named Defendants be dismissed without prejudice, thereby recommending that Plaintiff be granted leave

2

to amend with regard to those claims.[1]

Currently before the Court are Plaintiff's objections to Magistrate Judge Dancks' Report Recommendation and Order. *See* Dkt. No. 7.

## II. BACKGROUND[2]

At all relevant times, Plaintiff was incarcerated at Auburn Correctional Facility ("Auburn"). Dkt. No. 1 at ¶¶ 23, 45. During this time, Plaintiff was the inmate facilitator of the Shia Muslim community at Auburn. *Id.* On September 17, 2012, Plaintiff was ordered to undergo a urinalysis, which ultimately was negative for drug usage. Following the urinalysis, Defendant Gifford searched Plaintiff's cell, recovering a weapon which Plaintiff contends was "planted" by Defendant Gifford. As a result of the uncovered weapon, Plaintiff was immediately placed in the Special Housing Unit ("SHU"). *Id.* at ¶¶ 27-30.

On October 27, 2012 the Islamic Eid ul Adaha ("Eid") feast, "a major religious observation central to the Islamic faith," was held. *Id.* at ¶ 38. Plaintiff was a named participant pursuant to his religious designation as a practitioner of the Islamic faith. *Id.* at ¶ 39. According to Plaintiff's complaint, "[t]he policy at Auburn prison allows prisoners confined to SHU to observe the Eid by . . . providing them with the Halal meal prepared for the event." *Id.* at ¶ 40. During distribution of the noon meal, Plaintiff contends that he requested his Halal meal and was

---

[1] In response to Magistrate Judge Dancks' Order and Report-Recommendation, Plaintiff has withdrawn (1) his 42 U.S.C. §§ 1983, 1985, and 1986 claims for monetary damages against Defendants in their official capacity; (2) his RLUIPA claim for monetary damages against Defendants in their official and individual capacity; (3) all claims against Defendant Rogofsky; (4) his retaliation claim against Defendant Fagan regarding the events of August 12, 2013; and (5) all claims against Defendant Graham. *See* Dkt. No. 7 at 4-5.

[2] The following facts are specifically tailored to Plaintiff's present objections. For a complete statement of the underlying facts in this case, the Court refers the parties to Magistrate Judge Dancks' September 17, 2014 Order and Report-Recommendation. *See* Dkt. No. 6.

informed by Defendant Pelt that "the messhall had not sent any halal meals to SHU." *Id.* at ¶ 42. However, upon further inquiry, Plaintiff received a letter from Defendant Martin indicating that "the meals were prepared and delivered to the elevator for SHU." Dkt. No. 1-1 at 7.

Plaintiff subsequently filed a grievance on November 2, 2012, and was allegedly informed by non-party Sergeant Manna on November 7, 2012 that "no muslim inmates received a halal meal on October 27, 2012." Dkt. No. 1 at ¶¶ 51, 53. On January 22, 2013, Plaintiff received a formal grievance response from Defendant Thomas, stating that the "[f]ood service staff has been reminded to closely monitor special diet delivery locations. Grievance is granted to that extent." Dkt. No. 1-1 at 20. Plaintiff replied on January 25, 2013, requesting that Defendant Thomas institute a signing procedure to insure that religious meals are received by adherents." Dkt. No. 1 at ¶ 58; *see also* Dkt. No. 1-1 at 22. Plaintiff contends that he subsequently did not receive Halal meals during either his thirty-day fast of Ramadan in July 2013 or his six-day fast of Shawwal in August 2013. *See* Dkt. No. 1 at ¶¶ 66, 70, 76, 83.

Plaintiff commenced this civil rights action on April 16, 2014. *See* Dkt. No. 1. Pursuant to 28 U.S.C. §§ 1915(e), 1915A, Plaintiff's complaint underwent an initial screening regarding the sufficiency of the allegations contained therein. On September 17, 2014, Magistrate Judge Dancks filed an Order and Report-Recommendation recommending that several of Plaintiff's causes of action be dismissed. *See* Dkt. No. 6 at 28-30. Plaintiff filed written objections on October 6, 2014, specifically objecting to Judge Dancks' sixth recommendation to dismiss Plaintiff's first cause of action against Defendant Thomas. *See* Dkt. No. at 7 at 2.

### III. DISCUSSION

**A.  Standard of Review**

When specific objections to a magistrate judge's report-recommendation and order are

made, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). If, however a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge,"the magistrate judge's recommendations are reviewed for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, at *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). The court will "ordinarily refuse to consider argument[s] that could have been, but [were] not, presented to the magistrate judge in the first instance." *Mosley v. Superintendent of Collins Corr. Facility*, No. 9:11-CV-1416, 2015 U.S. Dist. LEXIS 6985, at *5 (N.D.N.Y. Jan. 22, 2015) (citations omitted). Upon review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Additionally, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Nevertheless, "there is a responsibility on the court to determine that a claim has some arguable basis in law before permitting a plaintiff to proceed

with an action in forma pauperis." *Moreman v. Douglas*, 848 F. Supp. 332, 333–34 (N.D.N.Y. 1994) (internal citations omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Thus, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

As a general matter, "'the district court has discretion whether or not to grant leave to amend, and its decision is not subject to review on appeal except for abuse of discretion.'" *Shomo v. New York*, 374 Fed. Appx. 180, 182 (2d Cir. 2010) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). An opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted). As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). However, because "[a] *pro se* complaint is to be read liberally . . . the court should not

dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might bet stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted).

## B.     Plaintiff's Objections to Report-Recommendation

In the present case, Plaintiff 's sole objection to Magistrate Judge Dancks' Order and Report-Recommendation is that his first cause of action against Defendant Thomas should not be dismissed. *See* Dkt. No. 7 at 2. Having reviewed the Order and Report-Recommendation, and Plaintiff's objections thereto, the Court finds that Magistrate Judge Dancks correctly determined that Plaintiff's first cause of action against Defendant Thomas should be dismissed.

### 1.  *Direct Involvement*

First, Plaintiff "objects to and disagrees with Magistrate Judge Dancks' finding that [the] facts do not allege direct involvement by Defendant Thomas" with respect to Plaintiff's first cause of action. *Id.* Plaintiff specifically contends that Defendant Thomas "was a part of the Special Events program committee, and directly involved in planning, coordinating and implementing the Eid, including the distribution of the religious meals." *Id.* In short, Plaintiff contends that "Defendant Thomas was personally involved in as much as he created the policy under which this violation occurred." *Id.*

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws." *Rizzo v. Goode*, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983). Not only must the conduct deprive the plaintiff of rights and privileges secured by the Constitution, but the actions or omissions attributable to each defendant must be the proximate cause of the injuries and consequent damages that the plaintiff sustained. *See Brown v. Coughlin*, 758 F. Supp. 876, 881 (S.D.N.Y.

1991) (citing *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62 L. Ed. 2d 481, *reh. denied*, 445 U.S. 920, 100 S. Ct. 1285, 63 L. Ed. 2d 606 (1980)).  As such, for a plaintiff to recover in a section 1983 action, he must establish a causal connection between the acts or omissions of each defendant and any injury or damages he suffered as a result of those acts or omissions.  *See id.* (citing *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S. Ct. 693, 58 L. Ed. 2d 619 (1979)) (other citation omitted).

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation and citations omitted).  "'[W]hen monetary damages are sought under § 1983, the [] doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required.'"  *Id.* (quotation omitted).  There is a sufficient showing of personal involvement of a defendant if:

> (1) the defendant directly participated in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  The continuing vitality of the supervisory liability test established in *Colon* has come into questions after the Supreme Court's 2009 decision in *Iqbal*.  *See Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012).  There, the Supreme Court noted that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

The Second Circuit has not yet definitively addressed how *Iqbal* affects the *Colon* factors, nor have the district courts within this Circuit reached a clear consensus. *See Aguilar v. Immigration & Customs Enforcement Div.*, 811 F. Supp. 2d 803, 814 (S.D.N.Y. 2011). Despite the lack of agreement regarding the *Colon* factors, it has been held that the third factor, that defendant created a policy or custom under which unconstitutional practices occurred, has survived *Iqbal*. *See Bellamy v. Mount Vernon Hosp.*, No. 07-cv-1801, 2009 WL 1835939, *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third *Colon* categories pass *Iqbal*'s muster — a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred"), *aff'd sub nom. Bellamy v. Mount Vernon Hosp.*, 387 Fed. Appx. 55 (2d Cir. 2010). It is under this factor that Plaintiff contends Defendant Thomas is personally involved.

Upon review of Plaintiff's complaint, the only indication of Defendant Thomas' involvement with Plaintiff's failure to receive a Halal meal for the Eid feast was simply his receipt of, and response to, Plaintiff's grievance letter *after* the alleged deprivation. Plaintiff does initially contend, however, that Defendant Thomas was "responsible for all aspects of the implementation and operation of programs at Auburn . . . ." Dkt. No. 1 at ¶ 7. Nevertheless, Plaintiff did not plead, as he now argues, that Defendant Thomas was specifically responsible for coordinating and implementing the meals for Eid through his involvement with the Special Events program committee. *See* Dkt. No. 7 at 2. Plaintiff concedes that "[d]iscovery should provide the Court with the Special Events program package for the Eid Event which denotes Defendant Thomas['] involvement." Since there are no allegations in Plaintiff's complaint, however, which sufficiently indicate Defendant Thomas' personal involvement in the

coordination and implementation of Eid feast, the Court finds Plaintiff's initial pleading to be insufficient so far as it does not allege that Defendant Thomas created the policy under which the violation occurred.

Accordingly, the Court adopts Magistrate Judge Dancks' recommendation to dismiss without prejudice Plaintiff's first cause of action to the extent it finds Defendant Thomas was not personally involved with the alleged constitution deprivation

### 2. *Failure to Remedy*

Plaintiff further "objects to and disagrees with Magistrate Judge Dancks' finding that there was nothing Defendant 'Thomas could have done to remedy what had occurred.'" Dkt. No. 7 at 3. As Plaintiff concedes, Defendant Thomas "could not make up for the missed religious meals." *Id.* Plaintiff's contends, however, that Defendant Thomas should have taken steps to "track or confirm the receipt of the halal meals." *Id.* Upon receiving Plaintiff's grievance, however, Defendant Thomas informed food services to closely monitor special diet delivery locations in the future. *See* Dkt. No. 1-1 at 20. Although Plaintiff may consider the grievance response to be inadequate, Defendant Thomas was under no obligation to implement the type of signing procedure Plaintiff so desired.

Accordingly, the Court adopts Magistrate Judge Dancks' recommendation to dismiss without prejudice Plaintiff's first cause of action to the extent it finds Defendant Thomas could not remedy Plaintiff's actual deprivation of the Eid meal.

## C.   Clear Error Review of the Report-Recommendation

Since Plaintiff has specifically objected only to Magistrate Judge Dancks' sixth recommendation, the remaining recommendations are review by the Court for clear error. *See Almonte v. N.Y. State Div. of Parole*, No. 9:04-cv-484, 2006 WL 149049, *5 (N.D.N.Y Jan. 18,

2006).  Upon careful review, the Court finds that Magistrate Judge Dancks applied the appropriate legal standards, accurately recited the facts as presented by Plaintiff, and correctly applied the law to those facts.  Accordingly, the Court finds no evidence of clear error in the remainder of Magistrate Judge Dancks' Order and Report-Recommendation.

## IV. CONCLUSION

After carefully considering Magistrate Judge Dancks' Order and Report-Recommendation, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Dancks' September 17, 2014 Order and Report-Recommendation is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that the Clerk shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon the remaining Defendants.  The Clerk shall forward a copy of the summons and complaint by mail to the Office of the New York State Attorney General, together with a copy of this Memorandum-Decision and Order and Magistrate Judge Dancks' Order and Report-Recommendation; and the Court further

**ORDERS** that Defendants, or their counsel, shall file a response to the remaining claims in the complaint as provided for in Rule 12 of the Federal Rules of Civil Procedure after service of process on the Defendants; and the Court further

**ORDERS** that Plaintiff's 42 U.S.C. §§ 1983, 1985, and 1986 claims for monetary damages against all Defendants in their official capacities, as well as Plaintiff's RLUIPA claims for monetary damages against all Defendants in both their official and individual capacities claims are **DISMISSED with prejudice**; and the Court further

**ORDERS** that Plaintiff may file an amended complaint as to those claims that were

dismissed without prejudice; and the Court further

**ORDERS** that the Clerk of the Court shall serve Plaintiff with a copy of this

Memorandum-Decision and Order in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  May 1, 2015
      Albany, New York

Mae A. D'Agostino
U.S. District Judge